# Staunton

JOHN H. STRATTON AND NU-GRAPE BOTTLING CORPORATION
v. NELLIE M. BERGMAN, ADMINISTRATRIX OF
R. A. PAUL, DECEASED.

September 23, 1937.

Present, All the Justices.

The opinion states the case.

*Woods, Chitwood, Coxe, Rogers & Muse,* for the plaintiffs in error.

*S. R. Price* and *Apperson, Rush & Gentry,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This is an action for damages for the wrongful death of R. A. Paul, who was killed in a collision between a motorcycle which he was riding and a truck which was owned by Nu-Grape Bottling Corporation and driven by John H. Stratton. The trial below resulted in a verdict of $3,500 in favor of the administratrix, on which judgment was entered. We have to decide whether the evidence is sufficient to sustain the said verdict and judgment.

The collision occurred during the early forenoon of November 2, 1935, at the intersection of Hamilton Terrace and Piedmont avenue, in the city of Roanoke. The truck, fully loaded, was being driven southwardly downgrade along Hamilton Terrace. The motorcycle, with an attached sidecar, was being operated southeastwardly along Piedmont avenue, which is upgrade as it intersects the western side of Hamilton Terrace at an acute angle.

There were only two eyewitnesses to the collision, William J. Gallagher, a boy, who was standing on the porch of his home on the east side of Hamilton Terrace, about opposite the point of collision, and Stratton, the driver of the truck.

Gallagher testified that when he first saw the two vehicles the motorcycle was just entering the intersection. It was proceeding slowly and its engine was laboring. The truck was then proceeding at a "moderate speed" and was near the intersection. He heard the sound of skidding tires, the truck swerved to the left, collided with the motorcycle near the center of Hamilton Terrace, and came to a stop some distance beyond the point of the collision.

Mr. Paul, the witness said, "looked up" just at the moment of the impact.

The testimony of Stratton is practically to the same effect. He says that he was proceeding at a speed of approx-

imately twenty miles per hour and did not see the motor-
cycle until it was entering the intersection and about twelve
or fifteen feet away.

Two police officers were on the scene within a few min-
utes after the accident and testified as to the physical sur-
roundings, the location of the vehicles, the marks on the
pavement, etc.

From their testimony it appears that although there were
trees and bushes in the intervening space between the two
streets, yet either vehicle could have been seen by the opera-
tor of the other as they approached the intersection. There
was one skid mark thirteen feet long, leading up to the point
of the collision, made by one of the rear wheels of the truck.

Upon examination it was found that the emergency brake
on the truck was entirely out of order. There was also
testimony from which the jury could have found that the
foot brake was not in proper condition.

■■ We think there is ample evidence to justify the
finding that the driver of the truck was negligent. In the
first place it was, of course, negligence to have driven this
truck without the adequate brakes required by the statute.
(Acts of 1934, ch. 265, pp. 405, 406, Michie's Code of 1936,
section 2154 (146).)

Next, it appears from the driver's own testimony that he
was not keeping a proper lookout. He admitted that he
was looking "toward the river" and did not see the motor-
cycle until it was actually in the intersection,—only twelve
or fifteen feet away, he says. And yet there is evidence
that it was visible to him as it approached along Piedmont
avenue, if he had only looked in that direction.

Counsel for the plaintiffs in error have frankly admitted
that the evidence was sufficient to warrant the jury in find-
ing that the driver of the truck was negligent. In their
brief they say: "The principal question for this court to
decide is whether Mr. Paul was guilty of contributory
negligence in making a left turn when he drove his motor-
cycle from a place of safety into an intersection and half
way across the intersection, and there ran his motorcycle

against the right front fender of an approaching truck without ever having seen the truck until the instant of impact."

If Mr. Paul committed the acts with which he is here charged, he would undoubtedly have been guilty of contributory negligence. And, perhaps, the jury might have been justified in inferring from the evidence that he was guilty of those acts. But the question is, Was the jury bound as a matter of law to have found from the evidence that he did these things, or was it justified in finding that he did not?

The presumption is that Mr. Paul was free from contributory negligence, that he did what he should have done. The testimony is that he was a skilled operator of long experience.

Assuming that he was making a left turn across the path of the truck, as claimed by the plaintiffs in error, was it negligence as a matter of law for him to have done so? We think not. The uncontradicted evidence is that he was proceeding slowly and reached the intersection first. While Stratton says that the truck was then only twelve or fifteen feet away, yet the marks on the pavement showed that one wheel of his truck skidded for a distance of thirteen feet up to the point of the collision.

■ It is a matter of common knowledge that a driver of an automobile, unless forewarned of the danger, can not apply the brakes coinstantaneously with his seeing the necessity for doing so. In a recent pamphlet entitled "Sudden Death And How To Avoid It,"* the statement is made, based on studies made by the State Board of Public Roads of Rhode Island, that a motor vehicle, equipped with effective four wheel brakes, when proceeding at the rate of twenty miles an hour, under normal conditions, as here, will go twenty-two feet from the time of the discovery of the peril before the driver's "mind reacts to the situation"

*By J. C. Furnas and Ernest N. Smith, Simon & Shuster, New York, 1935.

and before he begins the application of the brakes. If this statement is even approximately correct, we know from the fact that the truck skidded a distance of thirteen feet up to the point of collision that the motorcycle must have been much more than fifteen feet away when Stratton first saw it and realized that he must apply his brakes,—that is, when the motorcycle entered the intersection.

■ We can not say, then, that it is negligence as a matter of law for Mr. Paul to have undertaken to make a left turn at a street intersection in a city across the path of the truck which was proceeding at a moderate rate of speed. Mr. Paul had the right to assume that the truck was properly equipped with brakes; that the driver had exercised the proper lookout, had seen him and would accord to him the right of way to which he was entitled under the law.

■ Again, the jury was not bound to have found from the evidence that Mr. Paul "ran his motorcycle against the right front fender" of the truck, as claimed by counsel for plaintiffs in error. Neither of the eyewitnesses so testified. True it is that there were marks on the truck from which the jury might have found that the vehicles collided in this manner. But the motorcycle bore evidence of the fact that its right front wheel was struck near the hub by the right front tire of the truck. The front lights and the front part of the front wheel of the motorcycle were not damaged.

■ Nor do we think the jury was bound to have inferred from the evidence, as claimed by the plaintiffs in error, that Mr. Paul had not seen the truck before the moment of impact.

This claim is based on the testimony of young Gallagher and the defendant, Stratton, who said that Mr. Paul's attention seemed to be engaged by the actions of his engine and that he looked up just at the moment of impact. But this does not necessarily mean that he had never seen the truck before that time. Neither of the witnesses saw him until a fraction of a second before the impact. Neither knew his actions before reaching the intersection.

■ In the absence of any evidence to the contrary it is presumed that Mr. Paul did his duty as he approached the intersection,—that is, exercised ordinary care for his own safety, looked out for other vehicles approaching the intersection, saw the oncoming truck proceeding at a moderate rate of speed, and knew that he would arrive at the intersection first and was entitled to the right of way.

We thus see that the jury was not bound as a matter of law to have drawn from the evidence such inferences as have been drawn by the learned counsel for the plaintiffs in error.

■ The issue of contributory negligence of the deceased was fairly submitted to the jury. They have carefully considered all of the testimony and have viewed the scene of the collision. They have decided the issue in favor of the deceased. The verdict has been approved by the trial court, which heard and saw the witnesses and is no doubt likewise familiar with the scene of the accident. We can not say that the judgment is plainly wrong. Hence it is our duty under the statute to affirm it. (Code, section 6363.)

*Affirmed.*