**ATLANTIC GREYHOUND CORPORATION et al. v. LYON et al.**

No. 4508.

Circuit Court of Appeals, Fourth Circuit.

Nov. 7, 1939.

George E. Allen, of Richmond, Va. (Leith S. Bremner, of Richmond, Va., on the brief), for appellants.

Archibald G. Robertson, of Richmond, Va. (Hunton, Williams, Anderson, Gay & Moore and Norman L. Flippen, all of Richmond, Va., on the brief), for appellee and cross-appellant Fred M. Lyon.

John G. May, Jr., of Richmond, Va. (Sinnott & May and V. P. Randolph, Jr., all of Richmond, Va., on the brief), for appellee and cross-appellee.

Before PARKER and SOPER, Circuit Judges, and DOBIE, District Judge.

DOBIE, District Judge.

This is an action by Fred Lyon against the Atlantic Greyhound Corporation, Mc-

Cune, Eggleston, Luther Weeks, and Landon May, guardian ad litem for Jacquelin Weeks, an infant, for injuries sustained by plaintiff in a collision between the automobile (operated by McCune and Eggleston for the Atlantic Greyhound Corporation) in which plaintiff was riding as a passenger and an automobile owned by Luther Weeks and operated by Jacquelin Weeks.

In the court below, the judge directed a verdict in favor of the defendant, Luther Weeks; the jury acquitted Jacquelin Weeks of any negligence contributing to the plaintiff's injuries, but the jury brought in a verdict for $14,000 in favor of the plaintiff and against the defendants, Atlantic Greyhound Corporation, McCune and Eggleston.

One ground on which a reversal is sought is alleged prejudicial error in the trial court's charge to the jury. The court properly charged the jury that it was the duty of appellants in carrying the plaintiff to use the highest degree of care for his safety known to human prudence and foresight. But, it is asserted, there was prejudicial error justifying a reversal in that the trial court refused to go further and caution the jury that appellants were not insurers of the safety of the plaintiff. In this corner of the world, that added caution appears to be usual and customary. Norfolk-Southern Ry. Co. v. Tomlinson, 1914, 116 Va. 153, 81 S.E. 89; Murphy's Hotel v. Cuddy's Adm'r, 1919, 124 Va. 207, 97 S.E. 794. And we believe in cases of this character that the negative caution is proper and helpful. But, in the instant case, the charge of the trial court told the jury that "plaintiff's claim against the defendants is founded on the alleged negligence of the defendants". Further, the court defined negligence as "a failure to exercise the degree of care, considering the relationship of the parties, required by law under the circumstances". Then the charge differentiated sharply the different degree of care owed by some defendants as common carriers of passengers for hire to a passenger and by another defendant who sustained no such relation. And finally, in other parts of the charge, the trial judge again defined liability in terms of a duty to exercise care and negligence as a failure to live up to that duty. Under these circumstances we do not believe that the jury could have thought that appellants were insurers of plaintiff's safety. We are convinced that the jurors reached their verdict, thinking in terms of care and categories of negligence, without a resort to any criterion of insurance. Accordingly, the refusal of the court to add the requested caution was not prejudicial error and constitutes no ground for a reversal.

The general facts and circumstances surrounding and leading up to the accident are thus stated in the brief of appellants:

"On or about the 2nd day of February, 1938, Fred M. Lyon was injured when a Chevrolet automobile in which he [was] riding came into collision with a Ford automobile driven by Jacquelin Weeks. The Chevrolet automobile was being operated by the Atlantic Greyhound Corporation as a common carrier of passengers for hire. It was being driven by Harry Eggleston. The collision occurred in Nottoway County, Virginia, near the intersection of Route 460 with the road leading from 460 to Nottoway Court House, shown on the map of the State Highway System as Route 625. Route 460 at this point runs approximately east and west. Route 625 turns off of 460 at a slight angle in a southeasterly direction. The Chevrolet in which plaintiff was riding was being driven in a westerly direction en route from Blackstone to Crewe. One approaching the parting of the two roads from the direction of Blackstone has to ascend a steep grade immediately before reaching the point of the collision. The Ford, driven by Jacquelin Weeks, was being driven in an easterly direction from Crewe to Nottoway Court House. Had she reached her destination, she would have followed 460, in an easterly direction, until within a very short distance of the Court House and would then have gradually turned off of 460 to the right. Immediately east of the point where the two roads part, 460 turns gradually to the left. One going from Crewe to Nottoway Court House would, therefore, bear slightly to the right and follow 625, while one going from Crewe to Blackstone would bear slightly to the left and continue on 460. Close to the point where the roads part is a filling station, referred to in the record as Carson's Filling Station. The occupants of the Weeks' automobile were going to Nottoway Court House for a Miss Kelly. As the Weeks' automobile approached the point on 460 where the Nottoway Court House road bears off to the right, an automobile coming from Nottoway Court House

on 625, in which Miss Kelly was an occupant, passed the Weeks' automobile, and the occupants of the Kelly car signaled to the driver of the Weeks car and attracted her attention to the fact that Miss Kelly was in the car on her way to Crewe. Upon receiving these signals Jacquelin Weeks, the driver of the Weeks' automobile, immediately turned to the left, across the path of the oncoming Chevrolet, in an attempt to turn around in the highway and on the premises of Carson's Filling Station, for the purpose of going back to Crewe. Just as her automobile was in the act of crossing her left-hand side of the highway (defendants' right-hand side), it came into collision with the Chevrolet automobile operated by Harry Eggleston, and the plaintiff was injured."

■ The first question raised by appellants is: "Was Harry Eggleston, who operated the Chevrolet car for Herman Perkins McCune and Atlantic Greyhound Corporation, guilty of primary negligence in the premises?" Or, in other words, was there sufficient evidence on which the jury may have found that there was such negligence. We think the question should be answered in the affirmative. Eggleston knew well that he was approaching a five-point road intersection, he was driving up a grade of about ten per cent, through a six-foot cut, over the brow of a hill, with an accordingly restricted line of vision. Yet he failed to diminish his speed or slow up at all or to take any particular precautions against the possibility of meeting cars at this dangerous intersection. There was testimony to the effect that the speed of his car was then 35 miles an hour. The testimony is not altogether clear as to just what lookout he was keeping when he first saw the Weeks' car, and just what steps he took to avoid the accident. He admitted that he did not slow down approaching this intersection and said he did not know why he so failed. In the light of these facts, and other testimony which need not be recounted here, and in view of the very high degree of care required of this defendant, we think the question of the negligence of Eggleston was properly submitted to the jury, and their verdict that Eggleston was guilty of negligence should not be disturbed by an appellate court.

■ Another question is: Was the defendant, Jacquelin Weeks, as a matter of law guilty of concurring negligence? Or, was there any evidence which justified the court in leaving this question to the jury and the jury in their verdict that she was not guilty of such negligence contributing proximately to the accident? In view of the fact that she was required to exercise only ordinary care in the premises, again, though the question is a close one and not free from difficulty, we feel that we are not warranted in saying that there was no such evidence, by holding that she was guilty of such negligence as a matter of law. After her friends had signalled to her, she properly decided to turn around and follow them. The day was clear, the two-lane road was not very wide and was dry. The filling station, with entrances from the road, was a likely place for the turn. She was then proceeding at a moderate speed of 15 miles an hour. She testified that she looked in all directions before she began to turn and saw no cars. Miss Dinsmore (who was in the car with Miss Weeks) testified that she, too, looked in all directions without seeing any car. There was no testimony that the car of Miss Weeks was improperly or unskillfully handled in making the turn.

■ On the other side, great stress was laid on the failure of Miss Weeks to give the arm signal for a left-hand turn, required by the Virginia Motor Code. Code Va.1936, § 2154(122). Even though she saw no cars, and might have thought that no one would observe such signal and hence that it would (under the circumstances) be a futile gesture, she should have given this signal. But it does seem probable, and the jury might well have believed, from her testimony and that of other witnesses, that, even had she given this signal, it would not have been observed by Eggleston, and hence, the failure to give the signal did not contribute to the collision. Then, too, the point was made that if (as they testified) Misses Weeks and Dinsmore looked carefully about just before making the turn, they must have seen the car of Eggleston. But here, again, in the light of all the testimony (some of it obviously conflicting), we think this was a question for the jury.

So, under all the circumstances, the question, as to Miss Weeks, of the exercise of ordinary care vel non was, we think, properly submitted to the jury. The jury has resolved that question in her favor, and we cannot, as a matter of law, disturb that

160

verdict. This decision seems to be in line with the Virginia cases of Green v. Ruffin, 141 Va. 628, 125 S.E. 742, 127 S.E. 486; Sawyer v. Blankenship, 160 Va. 651, 169 S.E. 551; Virginia Electric & Power Co. v. Holtz, 162 Va. 665, 174 S.E. 870; Stratton v. Bergman, 169 Va. 249, 192 S.E. 813. And the opinion in Angell v. McDaniel, 165 Va. 1, 181 S.E. 370, seems particularly in point.

Finally reversal is sought on the ground that the verdict was excessive. The correction of that error, however, if there was any, lay with the court below upon a motion for new trial, the granting or refusal of which is not assignable for error here. New York, Lake Erie & W. R. Co. v. Winter's Adm'r, 143 U.S. 60, 75, 12 S.Ct. 356, 36 L.Ed. 71. As said by the Supreme Court in Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 91, 11 S.Ct. 720, 725, 35 L.Ed. 371, and quoted with approval in the case cited, "It may be that if we were to usurp the functions of the jury and determine the weight to be given to the evidence, we might arrive at a different conclusion. But that is not our province on a writ of error. In such a case we are confined to the consideration of exceptions, taken at the trial, to the admission or rejection of evidence and to the charge of the court and its refusals to charge. We have no concern with questions of fact, or the weight to be given to the evidence which was properly admitted." See, also, St. Louis, I. M. & S. R. Co. v. Craft, 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160; Chesapeake & O. R. Co. v. Winder, 4 Cir., 23 F.2d 794; Williamson v. Osenton, 4 Cir., 220 F. 653; Chesapeake & O. R. Co. v. Proffitt, 4 Cir., 218 F. 23; Fitch v. Huff, 4 Cir., 218 F. 17; Cyclopedia of Fed. Procedure, vol. 4, sec. 1413. While appellate courts in some jurisdictions are permitted to consider such questions, this is forbidden to us by the Seventh Amendment to the Constitution, U.S.C.A., which provides that "No fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

For the reasons set out above, the judgment of the District Court must be affirmed.

Affirmed.