# Richmond

MINNIE E. HOFFMAN, ADMINISTRATRIX AND JUDSON F. HOFFMAN, ADMINISTRATOR OF THE ESTATE OF FRANK LEE HOFFMAN, DECEASED v. W. B. STUART AND F. GROVE WHITE, PARTNERS TRADING AS W. B. STUART COMPANY.

May 1, 1950.

Record No. 3648.

Present, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*H. Thornton Davies*, for the plaintiffs in error.

*J. Sloan Kuykendall, Dabney W. Watts* and *Flournoy L. Largent, Jr.*, for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

This case which was previously before us on a procedural question[1] is now here on the merits.

The litigation arises out of the collision between a Dodge

[1] *Hoffman* v. *Stuart*, 188 Va. 785, 51 S. E. (2d) 239, 6 A. L. R. (2d) 247.

truck owned by W. B. Stuart and F. Grove White, partners trading as W. B. Stuart Company, and driven by their employee, Kenneth Ball, and a Ford coupe driven by Frank Lee Hoffman, which occurred on October 4, 1946, about three p. m., at the intersection of Highways Nos. 234 and 621, in Prince William county. Hoffman was killed instantly in the collision and both vehicles were badly damaged.

Stuart Company filed suit against Hoffman's personal representatives to recover damages to the truck. The personal representatives filed a cross-suit against Stuart Company, claiming damages for the alleged wrongful death of the decedent. There was a jury trial which resulted in a verdict denying the property damage claim of Stuart Company and awarding the personal representatives the sum of $10,750 on their cross-claim. The trial court, being of opinion that there should be no recovery on either claim, set aside the verdict and entered judgment accordingly. The matter is before us on a writ of error awarded the personal representatives who claim that the evidence is sufficient to sustain the verdict and that the trial court erred in not entering judgment thereon.

On the other hand, Stuart Company argues that the case is one in which the drivers of both vehicles were guilty of concurring negligence, or, in any event, that Hoffman was guilty of contributory negligence. Hence, they say, the judgment of the trial court should be sustained.

The intersection, which is in open and level terrain in the country, is in the form of an inverted "T". Highway No. 234 runs approximately east and west, while Highway No. 621 runs northerly at right angles to but does not cross the other route. A third road, running diagonally northwest and southeast, connects the two roads just mentioned, thus forming a triangle, one side of which extends 151 feet along the northern line of route No. 234 and the other of which runs 104 feet along the eastern line of route No. 621. A telephone pole is located approximately in the center of this grass-covered triangular plot.

The surfaces of the three roads are covered with crushed stone, the used portion of No. 234 being about 18 feet in width and that of No. 621 being about 22 feet. At the time of the collision the weather was clear and the roads were dry.

Ball, driving the Stuart truck, was proceeding westwardly along Highway No. 234, while Hoffman, driving the Ford coupe, was going southwardly along Highway No. 621.

Since, as has been said, Highway No. 621 terminated at its intersection with the northern line of No. 234, it was necessary that Hoffman turn either to the right or to the left upon reaching the intersection. However, there is no evidence to indicate which turn he expected to make. The collision occurred in the center of the intersection, the front of the Stuart truck striking the left door of the Hoffman car.

After the collision the two vehicles came to rest about five or six feet apart, in or near the intersection. The truck was diagonally across the road, with its left front wheel in the center of Highway No. 234 and its rear wheels near the ditch bordering the northern line of the road. Marks on the road indicated that the truck had skidded about 45 feet and had pushed or shoved the Ford coupe some 5 or 6 feet. There were no passengers in either vehicle and Ball was the sole surviving witness to the crash.

While the view which each driver had of the other vehicle, when they were both some distance from the intersection, was partly obscured by intervening buildings, trees and shrubs, it is agreed that from the time the Stuart truck had reached a point 225 feet from the center of the intersection, and the Hoffman car was 105 feet from the same point, each driver had a plain view of the other vehicle.

According to Ball's testimony he approached the intersection at a speed of from 40 to 42 miles an hour. While he said the Hoffman car approached the intersection "at a right good speed," another witness, who did not see the actual collision, placed the speed of the Hoffman car at from 35 to 40 miles an hour as it passed a point less than

200 feet from the intersection. Thus, according to the verbal testimony, each car approached the intersection at a moderate rate of speed.

Ball testified that when he was just east of the point where the diagonal road intersects the northern line of Highway No. 234, or about 225 feet east of the center of the intersection, he saw the Hoffman car to his right approaching the intersection, that he (Ball) took his foot from the accelerator, and that when he observed that the Hoffman car was not going to stop he "smacked on" his brakes "and the collision happened."

He admitted that when he first saw the Hoffman car it was "practically at the pole," or perhaps "two or three feet" north of it. Since, as has been said, the pole is located near the center of the triangular grass plot, Hoffman was less than 100 feet from the center of the intersection when Ball was more than 200 feet from the same point.

Ball further testified that he thought that Hoffman would stop before entering the intersection and yield him the right of way, because, he said, Hoffman was confronted with a stop sign just north of the intersection. However, the State trooper who had patrolled the road for some time, and other witnesses familiar with the scene, testified that there was no stop sign at the intersection, and counsel for Stuart Company admit in their brief that Ball was mistaken as to this.

Since, as the two vehicles approached the intersection, the Hoffman car was on the right, it was the duty of Ball to have yielded the right of way (Code of 1950, sec. 46-238),[2] and Hoffman had the right to assume that he (Ball) would do so. *Stratton* v. *Bergman,* 169 Va. 249, 255, 192 S. E. 813, 815.

Of course, as we have many times said, the fact that one vehicle has the right of way over another at a highway inter-

[2] That a "T" shaped intersection is within the purview of the statute, see *Mapp* v. *Holland,* 138 Va. 519, 524, 122 S. E. 430, 37 A. L. R. 478; *Hendricks* v. *Virginia Elec., etc., Co.,* 161 Va. 793, 797, 172 S. E. 160.

section does not relieve the driver of the privileged vehicle of the duty of keeping a reasonable lookout and otherwise exercising ordinary care to avoid a collision. Nor can the driver of the privileged vehicle, insisting upon the right of way, drive heedlessly into the path of another rapidly oncoming vehicle. *Johnson* v. *Harrison*, 161 Va. 804, 172 S. E. 259.

But we cannot say, as a matter of law, that such was the case here. In the absence of evidence to the contrary, the presumption is that Hoffman was keeping a proper lookout and saw the approaching truck. *Stratton* v. *Bergman, supra* (169 Va., at page 255, 192 S. E., at page 815). If so, according ao Ball's own testimony, Hoffman saw that he (Hoffman) was within 100 feet of the intersection while Ball was more than twice that far from it, that the Stuart truck was proceeding at a moderate rate of speed, and that he (Hoffman) had the right of way. It was for the jury to say whether, under such circumstances, Hoffman was acting as an ordinarily prudent person in entering the intersection ahead of the truck.

The case on behalf of the Stuart Company is further predicated upon the testimony of Ball that before Hoffman entered the intersection he failed to give the hand signal required by Code of 1950, sec. 46-233, indicating which way he would turn, and that his failure to do so constituted negligence which bars a recovery in favor of his personal representatives.

While the failure to give the required statutory signal was negligence, it would bar a recovery only if such failure was a proximate cause of the collision. *Morris* v. *Dame*, 161 Va. 545, 566, 171 S. E. 662. Here, too, it was for the jury to say whether the failure to give the signal was a proximate cause of the collision, and they were so instructed. The jury may well have believed that since Ball saw the Hoffman car approaching the intersection, and knew from the physical situation that it must turn either to the right or to the left, the failure to give the required signal was not a proximate cause. Indeed, as previously indicated, Ball's contention on

the stand was that Hoffman's failure to heed the supposed stop sign really brought about the collision.

For these reasons we are of opinion that the evidence is sufficient to support the verdict and that the lower court erred in setting it aside. Accordingly, the judgment complained of is reversed and an order will be entered in this court reinstating the verdict of the jury and entering judgment thereon in favor of the personal representatives against the defendants in error.

Since it appears from the record before us that the jury in its verdict failed to distribute the award as required by Code, sec. 8-636, the case is remanded to the trial court with direction that a judgment be there entered specifying the amount or proportion to be received by each of the beneficiaries, as provided by Code, sec. 8-638. See *Godwin* v. *Camp Mfg. Co.*, 183 Va. 528, 535, 32 S. E. (2d) 674, 677.

*Reversed and remanded.*