# Richmond

## MARGARET CARTER v. GEORGE GARNER.

March 4, 1963.

Record No. 5541.

Present, All the Justices.

The opinion states the case.

*Herbert K. Bangel* (*Stanley J. Bangel; Bangel, Bangel and Bangel,* on brief), for the plaintiff in error.

*Allan S. Reynolds* (*White, Ryan and Reynolds,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Margaret Carter brought this action against George Garner to recover damages for injuries sustained by her when a truck in which she was riding was in collision with a truck operated by Garner. At

the conclusion of her evidence the court below struck it out, on defendant's motion, on the ground that it did not prove any negligence on the part of the defendant. Summary judgment for the defendant was entered, Rule 3:20, and the plaintiff has appealed. The only issue is whether the plaintiff's evidence presented a jury question.

The accident happened on Western Branch Boulevard, on the east side of Churchland Bridge, in the city of Portsmouth, at about 9:30 a.m., December 5, 1959, a clear morning. The Boulevard was a four-lane street with two eastbound and two westbound lanes. At a point east of the bridge the two westbound lanes merged into one lane at the end of a broken white line, from which point there was only one westbound lane across the bridge. There was also only one eastbound lane across.

The trucks involved in the collision were both going west on the Boulevard. The truck in which Mrs. Carter, the plaintiff, was a passenger was being driven by Pete Dixon. She and Dixon were the only witnesses who testified and their testimony was to the following effect:

Mrs. Carter was sitting at the door on the right of the cab of the Dixon truck and had no control of the truck. The Dixon truck and the truck being driven by the defendant Garner stopped side by side at a stop light five or six blocks east of the bridge. The Dixon truck was in the left lane and the Garner truck in the right lane. When the light changed they started off about the same time, with the Garner truck a little ahead and the Dixon truck almost beside it, and they kept that relative position until near the place of collision. The radiator of the Dixon truck, in which the plaintiff was riding, was just about at the door of the Garner truck as they drove along. Both trucks were running at between 25 and 30 miles an hour.

When the two trucks reached a point 250 or 300 feet from the bridge, where painted white lines indicated the merging of the two westbound lanes into one, and when the Dixon truck was in the act of passing the Garner truck, the latter, without giving any signal, pulled over to its left into the side of the Dixon truck. It struck a large mirror attached to the right-hand side of the Dixon truck, broke the glass and bent inward the door beside which the plaintiff was sitting, causing the injuries of which she complains.

The two trucks were meeting traffic coming east off the bridge and Dixon testified that when the Garner truck pulled over against

him he could not move to his left because of the approaching traffic, and after the impact he could not stop because he was blocking traffic, so he pulled on across the bridge and stopped on the far side.

Both witnesses testified that Garner gave no signal to indicate a purpose to turn into the path of the Dixon truck, and that he had plenty of room to stay in his own lane.

A street called Riverside Drive enters the Boulevard on its north side, to the right of the two trucks, not far from the east end of the bridge. About 20 feet east of this intersection was a sign reading "Yield to Traffic on Right". The defendant argues that because of this sign and of § 46.1-221 of the Code, as amended, he had the right of way and it was Dixon's duty to yield it to him. Dixon testified that while he was familiar with the fact that the sign was there, he thought it applied to Riverside Drive.

The question of who had the right of way was not definitely answered by the evidence. But if it be assumed that the defendant had the right of way, the failure of Dixon to yield would be relevant to the question of Dixon's negligence, but it would not *ex necessitate* acquit the defendant of negligence. If defendant's negligence combined with the negligence of Dixon to cause the accident the defendant would still be liable.

According to the evidence there was no reason why the defendant should not have been aware of the presence of the Dixon truck beside him. For five or six blocks, ever since the two vehicles pulled away from the stop light, they had traveled practically side by side with the front of the Dixon truck at the left front door of defendant's truck. Yet, without any signal or warning of his purpose and when there was room for his truck to go straight ahead, the defendant turned into the Dixon truck at a point where Dixon could not cut to his left because of the oncoming traffic.

We said in *Russell, Adm'x* v. *Hammond,* 200 Va. 600, 605, 106 S. E. 2d 626, 631: "A driver who only looks ahead, oblivious to conditions behind and beside him which should affect his driving, is not keeping a proper lookout."

In *Johnson* v. *Harrison,* 161 Va. 804, 172 S. E. 259, an intersection collision in which the plaintiff as the driver on the right had the right of way under the statute (now § 46.1-221, *supra*), a judgment setting aside a verdict for the plaintiff was affirmed because of his negligence in failing to keep a proper lookout for the car approaching from his left. We said:

"* * It cannot be said that the failure of the defendant to yield the right of way to the plaintiff was the sole proximate cause of the accident, because it could not have occurred except for the concurring negligence of the plaintiff in driving into the intersection without looking for the defendant. * *" 161 Va. at 808, 172 S. E. at 260.

Among the authorities cited was the following from Blashfield: "'Too firm an insistence upon the right of way, even when one is clearly entitled to it, may be the grossest kind of negligence. Under such rule, if it appears to the driver of the car having the right of way, or if he can, by the exercise of care commensurate with the danger of the situation, discover that the other driver does not intend to yield the right of way, or intends to take precedence, and that a collision will likely occur, he cannot recklessly proceed, but is bound to stop or to turn aside, if, in the exercise of ordinary care for his own safety, he can do so. * *' " 161 Va. at 809-10, 172 S. E. at 261.

Again, in *Hoffman* v. *Stuart*, 190 Va. 880, 884-5, 59 S. E. 2d 94, 96, we stated:

"Of course, as we have many times said, the fact that one vehicle has the right of way over another at a highway intersection does not relieve the driver of the privileged vehicle of the duty of keeping a reasonable lookout and otherwise exercising ordinary care to avoid a collision. Nor can the driver of the privileged vehicle, insisting upon the right of way, drive heedlessly into the path of another rapidly oncoming vehicle." See also *Shelton* v. *Detamore*, 198 Va. 220, 225, 93 S. E. 2d 314, 317.

Whether the defendant was guilty of negligence which was a proximate or concurring cause of the accident was a question for the jury under the plaintiff's evidence, and the court erred in sustaining the defendant's motion to strike and entering summary judgment for the defendant.

The judgment is therefore reversed and the case is remanded for a new trial.

*Reversed and remanded.*