## Richmond

WILLIAM T. SOUTHERS v. EVELYN HARRIS PRICE.

January 18, 1971.

Record No. 7128.

Present, All the Justices.

*James A. Eichner* (*Allen, Allen, Allen & Allen,* on brief), for plaintiff in error.

*Leonard A. Paris (J. R. Scott, Jr.; White, Roberts, Cabell and Paris,* on brief), for defendant in error.

SNEAD, C.J., delivered the opinion of the court.

William T. Southers, appellant, filed a motion for judgment against Evelyn Harris Price, appellee, seeking damages for personal injuries he sustained as a result of a collision between an automobile he was driving and one operated by Mrs. Price while she was attempting to make a left turn. A jury verdict was returned in favor of Mrs. Price, and Southers moved to set aside the verdict and award him a new trial on all issues on the ground that the jury was erroneously instructed. The trial court overruled the motion and entered judgment on the jury verdict. We granted Southers a writ of error to that judgment.

Southers assigned as error the court's action in granting Instructions Nos. 1 and K, and in refusing Instructions Nos. 5 and X.

The accident occurred on February 20, 1967 shortly before 5 p.m. in the City of Richmond at the intersection of Petersburg Pike (U.S. Route 1) and Dana street. It was "fairly" dark and raining, and some vehicles had their headlights or parking lights turned on. Both Southers and Mrs. Price were familiar with the intersection since they traveled Petersburg Pike daily.

Petersburg Pike runs in a north-south direction and has three lanes in each direction which are divided by a concrete median strip. Dana is a two-lane street which runs east-west and intersects with the east side of Petersburg Pike but not the west side. There is no traffic control device at this intersection and vehicles traveling south on Petersburg Pike are permitted to make a left turn onto Dana street. The speed limit on Petersburg Pike at this point is 40 miles per hour.

One block north of Dana street Bells road intersects with Petersburg Pike and traffic there is controlled by lights. Immediately before the mishap the light was red for traffic proceeding north on Petersburg Pike. As a consequence vehicles in the left and middle lanes were backed up to Dana street and to the south of it for about one-half a block. However, the right lane and Dana street were not blocked.

Southers testified that he was proceeding north on Petersburg Pike toward Dana street. He was driving in the right lane at approximately 30 miles an hour and had his headlights turned on. Until he got within a car's length of the intersection, it appeared to him that traffic

was blocking the intersection at Dana street. He did not see Mrs. Price's vehicle until "a split second" before the impact when it was crossing the middle lane of the northbound portion of Petersburg Pike. He "tried to stop" but was unable to do so before striking her car.

Mrs. Price testified that she was driving south on the Petersburg Pike in the left lane so she could make a left turn onto Dana street. She had on her parking lights, windshield wipers and left turn signal. At the intersection she stopped and "waited to see that the intersection was clear". She said it was clear as far as she could see, and the driver of a stopped car in the left northbound lane signalled her "to go on". Mrs. Price further testified, "I started across the first lane into the second lane, and I started into the third lane [Souther's lane] looking toward my right to see if there was a car coming. And I saw this car coming, approaching the intersection, and I applied my brakes because it didn't look like he was going to stop, and I was hit." She also said that she was about 5 feet into the third lane and was stopped before Souther's car struck her automobile.

According to Officer B. J. Litton, who investigated the accident, the debris on the highway indicated the point of impact was about in the center of Souther's lane of travel and approximately 8 feet north of the south line of Dana street.

Southers offered Instruction No. 5, which the court refused. It reads:

"The Court instructs the jury that by statute in this State the driver of a vehicle in an intersection and turning therein to the left across the line of traffic of vehicles within or approaching the intersection shall yield the right of way to such other vehicles.

"Therefore, if you find from the evidence that the plaintiff was proceeding in a northerly direction on the highway referred to as Petersburg Pike and that the defendant was proceeding southwardly on Petersburg Pike and at the said intersection undertook to turn left into Dana Street across the line of travel of the plaintiff when the plaintiff was within or approaching the intersection, it was the duty of the defendant to yield the right of way to the plaintiff.

"If you further find from the evidence that in these circumstances the defendant failed to yield the right of way to the plaintiff and that such failure was the sole proximate cause of the collision between the two vehicles then you shall return your verdict in favor of the plaintiff."

A similar instruction was granted in *Taylor* v. *Turner*, 205 Va.

828, 832-33, 140 S.E.2d 641, 644 (1965). It was objected to solely on the ground that it failed to tell the jury that the defendant, Turner, "forfeited her right of way unless she was proceeding lawfully or was 'free of negligence' in approaching the intersection." On appeal the plaintiff, Taylor, argued in his brief that the instruction should have been qualified by adding, "it was the duty of Taylor *to exercise ordinary care* to yield the right of way to Effie Turner." Since no objection was made in the trial court on this ground, we ruled that it should not be considered on appeal. Rule 1:8. However, the opinion does state, "But aside from that, the instruction, being phrased in the language of the statute [46.1-222,[1] *supra*], is in proper form."

Southers argues that our approval of the instruction as offered in *Taylor* eliminated any requirement that the instruction be qualified with language stating: "*to exercise ordinary care* to yield the right of way * * *." Essentially, Southers argues that a motorist turning left across the line of travel of other vehicles within or approaching an intersection is negligent as a matter of law.

On the other hand, Mrs. Price contends that Code § 46.1-222 should be read in conjunction with Code § 46.1-216, and relies on *Atwell v. Watson,* 204 Va. 624, 133 S.E.2d 552 (1963) to support her position. Section 46.1-216 provides, in part, that "[e]very driver who intends to start, back, stop, turn or partly turn from a direct line shall first see that such movement can be made in safety * * * ". In *Atwell* a collision occurred when Watson made a left turn across the path of an approaching vehicle at an intersection. We said, "In a factual situation such as existed here, Section 46.1-216 which requires the operator of a vehicle intending to make a left turn to first *use reasonable care to see that he can do so in safety* must be read and considered conjunctively with Section 46.1-222 which requires a left turning driver to yield the right of way to other vehicles within or approaching the point of turn." (Emphasis added.) *Atwell v. Watson, supra,* at 631, 133 S.E.2d at 557.

In stating that the instruction in *Taylor, supra,* was in proper form, we did not intend to eliminate the requirement that §§ 46.1-216 and 46.1-222 be read together. When the two sections are considered conjunctively, we reach the conclusion that an instruction based on § 46.1-222 must have qualifying language, such as *in the exercise of ordinary care,* in stating the duty of defendant to yield the right of

---

(1) § 46.1-222. "The driver of a vehicle, in an intersection and turning therein to the left across the line of travel of vehicles within or approaching the intersection shall yield the right-of-way to such other vehicles, * * *."

way. Instruction No. 5 contained no such qualifying language, and would have made Mrs. Price negligent as a matter of law. We find that the trial court was correct in refusing this instruction. Anything we indicated in *Taylor* contrary to this holding is expressly over-ruled.

█ In place of Instruction No. 5 the trial court gave, over Southers' objection, Instruction No. 1, which provides:

"The Court instructs the jury that by statute the driver of a vehicle in an intersection and turning therein to the left across the path of other vehicles on the same street approaching from the opposite direction, the presence of which is observed, or discoverable in the exercise of ordinary care by the keeping of a reasonable lookout, or could be anticipated even though incapable of being seen, in the exercise of ordinary care, is required to yield the right of way to such other vehicles as may be approaching the intersection at such speed and distance that for the turning vehicle to then proceed with his turn would create unreasonable risk of collision.

"The duty to yield the right of way, where applicable, may involve remaining stopped, slowing down, or coming to a complete stop, as the circumstances of a particular case may require, insofar as may reasonably be expected of the turning driver in the exercise of ordinary care on his part to the end that the approaching vehicle may proceed in reasonable safety.

"If you believe by a preponderance of the evidence in this case that the defendant, Price, failed in the performance of the above-mentioned duty, in any particular, then she was guilty of negligence. If you further believe that such negligence on her part, if any, was the sole proximate cause of the accident then you will find your verdict for the plaintiff."

Although this instruction does incorporate a reasonable or ordinary care standard, its language is confusing, argumentative and subject to misunderstanding. It fails to clearly point out what duty Mrs. Price, the left turning driver, owed Southers. For these reasons, we hold that it was error to give Instruction No. 1. As was said in *Trucking Company* v. *Flood*, 203 Va. 934, 936, 128 S.E.2d 437, 439 (1962), the office of instructions "is to fully and fairly inform the jury as to the law of the case applicable to the particular facts, and not to confuse them."

The instruction would have been proper if it had read:

The Court instructs the jury that by statute in this State the driver of a vehicle in an intersection and turning therein to the left across

the line of travel of vehicles within or approaching the intersection shall yield the right of way to such other vehicles.

If you believe from the evidence that the defendant in the exercise of ordinary care should have yielded the right of way to the plaintiff and failed to do so then the defendant was negligent.

If you further believe from the evidence that such negligence was the sole proximate cause of the collision, then you shall return your verdict in favor of the plaintiff.

■ Next, Southers contends that the court erred in granting Instruction No. K. It reads:

"If the jury believe from the evidence that the plaintiff had the right of way over the automobile being operated by the defendant and if the jury believe from the evidence that it appeared to the plaintiff, or by the exercise of ordinary care should have appeared to him, that the defendant did not intend to yield that right of way, then it became the duty of the plaintiff to exercise ordinary care under the circumstances to avoid a collision.

"And if you believe from the evidence that the plaintiff failed to exercise ordinary care in the performance of the foregoing duty, then he was negligent; and if you further believe from such evidence that any such failure was the sole proximate cause of the collision, or that it proximately contributed to cause it, then you shall find your verdict in favor of the defendant."

Southers objected to this instruction, as phrased, because it failed to specify when his duty to avoid a collision arose. He says his duty to avoid a collision did not arise unless the failure of Mrs. Price to yield appeared or should have appeared to him in "sufficient distance or time to take effective action". We think the instruction was a correct statement of the law. It told the jury that even if they believed from the evidence that Southers had the right of way, he was required to exercise ordinary care under the circumstances to avoid a collision if it appeared or should have appeared to him that Mrs. Price was not going to yield. See *Hoffman* v. *Stuart*, 190 Va. 880, 884-5, 59 S.E.2d 94, 96 (1950). Under the instruction, as phrased, Southers would be permitted to argue that in the exercise of ordinary care he did not have sufficient distance or time to take effective action.

■ Finally, Southers claims the court erred in refusing Instruction No. X. It would have told the jury that if they believed from the evidence and other instructions Southers had the right of way then he could assume it would not be violated until he saw or should have seen to the contrary. A driver's right to assume that the right

of way will be yielded to him depends upon the evidence, and he cannot rely on an assumption that is contrary to an obvious fact. *Mawyer* v. *Thomas*, 199 Va. 897, 902, 103 S.E.2d 217, 220 (1958). Southers testified that, until he was within a car's length of the intersection, it appeared to him that the intersection was blocked. Further, he did not see Mrs. Price's vehicle until "a split second" before the impact when it was crossing the middle lane of the northbound portion of Petersburg Pike. Southers cannot claim he was assuming that Mrs. Price would yield to him when his testimony shows that he assumed the open intersection was blocked, and that he was unaware of Mrs. Price's automobile until immediately before the collision. No evidence exists here upon which Southers could base an assumption that Mrs. Price would yield to him. Accordingly, the trial court properly refused Instruction No. X.

Since Instruction No. 1 was defective, the judgment appealed from is reversed and the case remanded.

*Reversed and remanded.*