# Tony Graddy

## v.

# Ulysses T. Hatchett, Administrator, Etc.

Record No. 831932

March 6, 1987

Present: All the Justices

*John G. Crandley (Preston, Wilson & Crandley*, on brief), for appellant.

*Stanley E. Sacks (Girard C. Larking, Jr.; Sacks, Sacks and Larkin*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

This is an appeal in a wrongful death action arising from a collision of motor vehicles at a street intersection. We consider whether the trial court erred in striking the evidence of one defendant on the issue of liability, in granting one of the instructions on the issue of damages, and in ruling the verdict was not excessive in amount.

On September 14, 1982, about noon, a Ford convertible automobile operated by appellant Tony Graddy and a municipal trash truck operated by George Jackson, Jr., collided in Norfolk causing

the death of Albarnie T. Hatchett, a passenger in the automobile. The driver of the automobile turned left into the path of the truck. A month later, appellee Ulysses T. Hatchett, administrator of the decedent's estate, filed this action under the death by wrongful act statutes, Code §§ 8.01-50 to -56, against Jackson, the City of Norfolk (Jackson's employer), and Graddy. Prior to trial, the plaintiff nonsuited the City.

At the conclusion of all the evidence, during a four-day trial, the trial court sustained the plaintiff's motion to strike Graddy's evidence on the issue of liability. Thereafter, the case was submitted to a jury on the issue of damages as to defendant Graddy and on the issues of liability and damages as to defendant Jackson.

The jury found in favor of the plaintiff against both defendants and assessed damages in the amount of $402,652.64. Of that amount, $2,652.64 was distributed to the personal representative for hospital and funeral expenses and the balance was distributed to Ulysses T. Hatchett, father of the deceased, as a beneficiary pursuant to Code § 8.01-53. The trial court overruled motions to set aside the verdict and entered judgment on the verdict in September 1983. About a month later, Jackson paid $232,652.64 in partial satisfaction of the judgment under a settlement agreement with the plaintiff approved by the trial court. Subsequently, we awarded Graddy this appeal from the judgment order.

The facts mainly are undisputed. Nevertheless, because the trial court struck Graddy's evidence, we will view the facts, and all reasonable inferences deducible therefrom, in the light most favorable to him, according to settled principles of appellate procedure. *Page* v. *Arnold*, 227 Va. 74, 76, 314 S.E.2d 57, 58 (1984).

The accident occurred at the intersection of Virginia Beach Boulevard and Raby Road. The Boulevard was a wide, straight, level, east-west street with two lanes in each direction separated by a grass median strip. At the intersection, there was a third, left-turn lane to permit such turns by eastbound and westbound traffic. Two-way "feeder" roads ran parallel to the Boulevard on both sides and were separated from the Boulevard by grass medians. At the scene, Raby Road, a two-way street, intersected the Boulevard at right angles from the north while Round Bay Road intersected the Boulevard in like manner from the south.

Traffic at the intersection was controlled by standard red, amber, and green lights, including a lighted green arrow permitting

left turns. The speed limit for the Boulevard was 45 m.p.h. and for Raby Road, 25 m.p.h. The weather was clear and the streets dry.

Jackson was operating an empty, 24,000-pound truck west in the right-hand travel lane of the Boulevard. Graddy had been travelling east on the Boulevard and had come to a stop in the left-turn lane. As Jackson approached the intersection, he was travelling about 45 m.p.h. and was faced with "a solid green light." He observed Graddy come to a "full stop" in the eastbound turn lane. According to Jackson, "I was almost at the light ready to go through the light when he [Graddy] came out." Graddy made a left turn and the vehicles collided in the intersection in the right-hand westbound travel lane of the Boulevard with the front of the truck striking the right side of the automobile. The vehicles came to rest at the northwest corner of the intersection. There were no skid marks left by either vehicle prior to the point of impact.

Graddy, who was 16 years of age at the time of the accident, testified that as he approached the intersection eastbound intending to make a left turn into Raby Road, he entered the left-turn lane behind several other vehicles and came to a stop. The decedent, 17 years of age, was riding in the right front seat. After the cars ahead of him made a left turn, Graddy moved forward in the lane and made another stop. At the time, the light facing him was "solid green," not a lighted green arrow. Graddy further testified there was nothing to obstruct his view of the oncoming truck and he observed it approaching the intersection "approximately 75 yards away" travelling at a "normal speed." Graddy "thought that truck was going to stop," he said, although he had "no idea" of the color of the traffic light facing the truck driver and there was nothing about the movement of the truck which indicated the truck would stop.

According to Graddy, the truck was about 40 yards away from him as he started a normal, slow movement left across the intersection with the light facing him still solid green. Graddy did not see the truck again before the impact.

Graddy's explanation for moving directly into the path of the truck was, "I had made up my mind already that I had enough time to get through" and, "I felt I had enough time to make it."

Testimony by many other eyewitnesses to the accident mainly confirmed the account of the collision given by the two drivers involved.

On appeal, Graddy argues the trial court erred in striking his evidence on the issue of liability. He contends the evidence, viewed in the light most favorable to him, shows that Graddy believed he had time enough to complete his turn safely and that the truck "had to have been a considerable distance away when he started his left turn." Thus, according to the argument, jury issues were presented upon the reasonableness of Graddy's belief, "as well as to the determination of the right-of-way, if any, in this case." We do not agree.

Ordinarily, issues of negligence, contributory negligence, and proximate cause are questions for the jury. But when reasonable persons could not disagree on the facts and inferences drawn from the evidence, such issues become questions of law for the court. *Jordan* v. *Jordan*, 220 Va. 160, 162, 257 S.E.2d 761, 762 (1979). Moreover, when the parties have introduced all available evidence and the trial court has sustained a motion to strike the evidence, this Court on review will examine the evidence to determine whether a verdict in behalf of the losing party can be sustained. If it cannot, we will affirm the action of the trial court. *Walton* v. *Walton*, 168 Va. 418, 422, 191 S.E. 768, 770 (1937). This is such a case.

Graddy, in making a left turn at the intersection in question, had the duties to exercise ordinary care to yield the right of way "to any vehicle approaching from the opposite direction which is so close as to constitute a hazard," Code § 46.1-222, and to "first see that such movement can be made in safety," Code § 46.1-216. *Southers* v. *Price*, 211 Va. 469, 472-73, 178 S.E.2d 685, 687 (1971). Graddy's own testimony, and the other evidence as well, lead to only one conclusion: Graddy, in violation of the foregoing duties, moved from a place of safety into the intersection and into the path of a fast-moving truck in plain view, upon the erroneous assumption that the truck would stop before entering the intersection. This is a classic case of negligence as a matter of law which was a proximate cause of the collision.

We are not persuaded by Graddy's argument that a jury issue on his negligence was presented because he testified he "felt" he "had enough time to make it." This belief that he had the time and opportunity to make the turn safely was contrary to the obvious fact that the truck was only 40 yards away travelling, by Graddy's own admission, "normal 45 miles per hour" when Graddy made his turn. Graddy's subjective assumption cannot re-

lieve him of a clear failure to appreciate the danger presented by a vehicle in close proximity to the intersection approaching in the path across which he planned to turn.

*Citizens Rapid Transit Co.* v. *O'Hara,* 203 Va. 979, 982, 128 S.E.2d 270, 272 (1962); *Umberger* v. *Koop,* 194 Va. 123, 130, 72 S.E.2d 370, 375 (1952); and *Temple* v. *Ellington,* 177 Va. 134, 142, 12 S.E.2d 826, 828 (1941), relied on by Graddy, are distinguishable on their facts. Those cases, in which jury issues were presented, all involved drivers who had been stopped on a roadway, who had looked for vehicles on the intersecting roadway, and who had entered the intersection where a collision occurred under the belief that such movement could be made safely. None of those drivers, however, had been making a left turn, on a clear day with unobstructed view, across the path of an oncoming truck travelling at undiminished speed in the travel lane across which the turn was attempted.

At trial, over Graddy's objection, the court gave the following instruction:

"You should consider the life expectancy figure of 52.6 years along with any other evidence relating to the health, constitution, and habits of the plaintiff's decedent, Albarnie Hatchett, in determining his life expectancy."

In another instruction, the court authorized the jury to consider as damages to the beneficiaries any sorrow, mental anguish, and loss of solace caused by the accident and death of the decedent. The instruction provided, in the language of Code § 8.01-52(1), that solace "may include society, companionship, comfort, guidance, kindly offices, and advice of the decedent." The instruction also provided, in the language of § 8.01-52(2)(ii), that recovery could be had for "any reasonably expected loss of services, protection, care, and assistance" which the deceased provided.

According to Code § 8.01-419, the table of life expectancy contained in the statute shall be received by all courts "as evidence, with other evidence as to the health, constitution and habits" of any person; it may be received whenever "necessary to establish the expectancy of continued life of any person from any period of such person's life, whether he be living at the time or not."

The question then becomes whether, in order to establish the foregoing elements of damage, it is relevant and necessary to show

the expectancy of continued life of the decedent. Graddy contends there was no necessity for the jury to determine the decedent's life expectancy because there was "no evidence of pecuniary loss to the beneficiaries" and there was "no evidence . . . of any kind of dependency by any of the beneficiaries on the decedent." We disagree with this contention.

None of the elements of damage in issue is contingent upon proof of dependency and there was evidence of pecuniary loss. Following apparently conflicting decisions of this Court on the question whether the life expectancy table properly may be admitted in evidence in a wrongful death action where a minor has been killed, compare *Edwards* v. *Syrkes*, 211 Va. 600, 602, 179 S.E.2d 902, 903 (1971), with *Budzinski* v. *Harris*, 213 Va. 107, 112, 189 S.E.2d 372, 376-77 (1972), the General Assembly enacted in 1974 the predecessor to § 8.01-52. Acts 1974, ch. 444. As we already have noted, the statute now permits recovery for the beneficiaries' loss of society, companionship, comfort, guidance, advice, services, protection, care, and assistance provided by the decedent. These statutory elements contemplate assignment of a dollar value to these losses and recovery therefor whether or not the beneficiaries can establish their dependency on the decedent. Accordingly, the expectancy of continued life of the decedent is relevant and necessary to establish the extent of loss for those items. The expectancy table, therefore, is admissible if such items of loss are supported by the evidence.

The evidence in this case supports recovery for such items. The decedent was survived by his parents, a younger brother, two older half-sisters, and two older half-brothers. Testimony showed that the family members were devoted to each other. The decedent often took care of the children of a sister; he assisted a brother in his work of cleaning and performing odd jobs. The decedent also helped his mother with shopping, washing and cleaning, and assisted his father with his part-time work of repairing air-conditioning motors and lawn mowers. The decedent helped maintain the family automobiles and assisted his parents in painting and plastering the family home. The evidence also showed that the decedent was "very protective" of his younger brother, that he helped the brother with his homework, and that the two "were very close." Thus, we hold that the trial court did not err in permitting the jury to consider the life expectancy table.

 Our determination favorable to the plaintiff on the instruction issue preordains our decision on the question whether the verdict is excessive. Graddy argues that "the amount of damages awarded in this case is, on its face, shocking, when it is considered that this case was a suit for compensatory damages and the facts of this case contain no aggravating factors at least as to the issue of this defendant's negligence." While the amount of the verdict is larger than many members of this Court would have awarded had we been the triers of fact, we cannot say that it is excessive as a matter of law.

For these reasons, the judgment of the trial court in favor of the plaintiff will be

*Affirmed.*