# TRANSILIFT EQUIPMENT, LTD.

## V.

# WARREN WAYNE CUNNINGHAM

Record No. 841497

September 4, 1987

Present: All the Justices

Rosewell Page, III (Donald D. Anderson; Sidney H. Kirstein; McGuire, Woods & Battle; McRorier, Kirstein & McMahon, on briefs), for appellant.

J. Michael Gamble (Pendleton & Gamble, on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

This is an appeal from a judgment in a products liability case. A jury returned a verdict in favor of Warren Wayne Cunningham against TransiLift Equipment, Ltd. (TransiLift), for $255,000, and the trial court entered judgment on the verdict. In this appeal, TransiLift contends that the judgment should be reversed and final judgment entered in its favor because Cunningham made pretrial discovery admissions that conclusively established facts inconsistent with his theory of defect and causation. Alternatively, TransiLift contends that the trial court erred in admitting certain damage evidence and that the verdict is excessive.

Cunningham sued Greater Lynchburg Transit Company (Transit Company), TransiLift, and Muncie Reclamation and Supply (Muncie). He alleged that he was injured when the wheelchair in which he was seated was thrown backwards off a lift for handicapped bus passengers. The lift was manufactured by TransiLift, sold by Muncie, and operated by Transit Company. Cunningham's action against TransiLift and Muncie sounded in warranty and negligence; his suit against Transit Company was for negligent operation of the lift. Cunningham took a nonsuit as to Muncie prior to trial and a nonsuit as to Transit Company after he rested his case.

An employee of TransiLift installed the lift on a bus owned by Transit Company. The lift is a device that forms from the steps on a bus. It is designed so that a bus driver can convert the steps into a platform that can be lowered and raised, thereby allowing wheelchair passengers to board the bus.

A bus driver can operate the lift by using a control that is mounted on the dashboard of the bus to the right of the steering wheel. When a wheelchair passenger desires to board the bus, the driver operates the lift as follows: After turning on the main power switch, the driver pulls the "steps-platform" switch outward and to the right, causing the steps to convert into a platform that forms at the floor level of the bus. He then lowers the platform to

ground level by pushing downward on the "up-down" switch. When the platform reaches ground level, the wheelchair passenger rolls onto the platform. The driver then raises the platform back to floor level by pushing upward on the "up-down" switch. After the wheelchair passenger has rolled his wheelchair onto the bus, the driver reconverts the platform into steps by pulling the "steps-platform" switch outward and to the left. Finally, he turns off the power switch.

A person also may operate the lift by using electrical override controls located in the floor of the bus immediately behind the right front wheel well. These controls allow the operator to bypass a malfunction in the device.

After the lift had been installed, Transit Company decided to demonstrate its operation for the news media. Transit Company asked Cunningham, who was and still is a quadriplegic confined to a wheelchair, to participate in the demonstration, and he agreed to do so.

On April 28, 1980, the day of the accident, a Lynchburg television station film crew was present to film the demonstration. In addition to Cunningham, three Transit Company employees were present: Sam Smith, the General Manager, Rick Taylor, the Assistant General Manager, and Walter Apperson, a supervisor of bus operators.

When the demonstration began, Apperson operated the device from the driver's seat with the dash-mounted controls. He first caused the device to go through a complete cycle (from steps to platform and back to steps) without having anyone on the lift. The lift worked perfectly.

Apperson then converted the steps into a platform, lowered it to ground level, and Cunningham rolled his wheelchair onto the lift. Apperson raised the lift to the floor level of the bus, where it stopped. He then lowered Cunningham to the ground. The lift worked properly. As Apperson began to raise Cunningham a second time, the lift began to fold and went halfway into the "step mode," throwing Cunningham and his wheelchair backwards off the lift and onto the ground.

After Cunningham had been helped back into his wheelchair, Smith approached him and said "human error" had caused the accident. Smith asked Cunningham if he felt like continuing with the demonstration. Cunningham agreed to participate in a second demonstration.

Because Smith could not make the lift work from the driver's controls, he used the override controls in the floor of the bus. Using these controls, the lift raised and lowered Cunningham without incident.

After the accident, TransiLift's General Manager, Robert West, inspected the device. West observed that although the dash-mounted controls would make a platform and lower the lift, only the electrical override controls would raise the platform or allow it to be stored back into steps at floor level.

After removing the cover of a sealed electrical control box located inside the power module, West discovered that an electrical terminal connection had become disengaged. West explained that the "terminal fork, itself, had not become disengaged, but rather the insulated conductor had become separated from the mechanically crimped terminal fork."

After "[a] new terminal fork was reinstalled and reconnected to the respective terminal," the lift properly performed all of its design functions from the dash-mounted controls. West concluded that the disengaged wire had caused the device to malfunction when operated from the driver's seat using the dash-mounted controls.

Cunningham called Bernard Cooper, a consulting mechanical and electrical engineer, as an expert witness. Based upon West's findings and his own inspection, Cooper opined that the accident occurred when the wire became disengaged from its proper connector and made contact with another terminal in the electrical control box, causing the lift to drop suddenly and to begin forming steps. Cooper conceded, however, that after this occurred, the lift could not have been raised by using the dash-mounted controls.

TransiLift first contends in this appeal that Cunningham cannot be allowed to rely on portions of his trial testimony that tend to prove facts different from facts established by certain responses to requests for admissions he made pursuant to Rule 4:11. Thus, our task is to determine whether, under the circumstances of this case, Cunningham is bound by his pretrial responses as a matter of law.

The pertinent facts and circumstances germane to this inquiry are as follows: Cunningham gave certain answers in pretrial discovery, some by answers to interrogatories, Rule 4:8, and others by depositions, Rule 4:5. In those discovery procedures, Cunningham stated that Sam Smith operated the lift after the accident from the dash-mounted controls and the lift functioned normally.

He also stated that while he was on the lift and the platform had been raised to floor level, Smith was unable to lower the lift using the driver's controls and lowered him by using the override controls.

Subsequently, TransiLift filed requests for admissions and asked Cunningham to state whether his deposition statements and interrogatory answers were true and accurate. Because Cunningham either expressly admitted that these answers were correct or failed to respond within 21 days, the requests were deemed to have been admitted. *See* Rule 4:11(a).

At trial, however, while being cross-examined by TransiLift's counsel, Cunningham stated that he did not see Smith operate the lift from the driver's controls after the accident. Cunningham testified that following the accident, Smith operated the lift from the override controls in the floor of the bus.

Cunningham's expert had testified earlier in the trial that if his theory of the accident's cause was correct, Smith could not have operated the lift after the accident by using the driver's controls. Thus, TransiLift asserts, if Cunningham is held to his pretrial admissions, the facts that they established "render [Cunningham's] expert's theory of defect and causation impossible" and Cunningham's case fails as a matter of law.

TransiLift makes a three-pronged argument in support of its contention that Cunningham cannot be allowed to rely upon trial testimony that conflicts with his pretrial statements. First, it asserts that the matters admitted under Rule 4:11(b) are conclusively established. Second, TransiLift argues that Cunningham is estopped from testifying contrary to his pretrial admissions. Finally, it claims that Cunningham is bound by his pretrial statements under the rule of *Massie* v. *Firmstone*, 134 Va. 450, 114 S.E. 652 (1922).

When the trial was conducted in June 1984, Rule 4:11 read in pertinent part as follows:

(a) *Request for Admission.* — A party may serve upon any other party a written request for the admission . . . of the truth of any matters . . . set forth in the request that relate to statements or opinions of fact or of the application of law to fact . . . .

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 21

days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter. . . .

. . . .

(b) *Effect of Admission.* — Any matter admitted under this Rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission . . . .

(c) *Part of Record.* — Any such request for admission, and any response thereto or other proceeding thereon, shall become a part of the record when the original thereof is filed with the clerk of the court.

The purpose of the Rule is to relieve the parties of the burden of proving undisputed facts, thereby expediting the trial and facilitating a proper disposition of the case. *DeRyder* v. *Insurance Company*, 206 Va. 602, 611, 145 S.E.2d 177, 183 (1965); *Fire Assurance Corp.* v. *Cohen*, 203 Va. 810, 813, 127 S.E.2d 399, 401 (1962).

The crucial question in the present case is whether the statements of fact contained in the admissions Cunningham made pursuant to Rule 4:11 were "conclusively established." TransiLift contends that the responses were conclusive and binding upon Cunningham when they were "filed with the clerk of the court." At that time, TransiLift asserts, they became "a part of the record," and there was no reason to introduce them into evidence.* TransiLift reasons that because the responses were binding upon Cunningham, they could not be waived at trial.

Cunningham, on the other hand, contends that his responses were not binding upon him because TransiLift waived their conclusive effect in two ways: (1) by failing to introduce the statements as responses to requests for admissions into evidence at trial, and (2) by failing to object to Cunningham's trial testimony that was contrary to his responses. We have not previously addressed either of Cunningham's waiver contentions in the context of Rule 4:11.

Rule 4:11 is virtually identical to Rule 36 of the Federal Rules of Civil Procedure. As construed by federal courts, a party seeking to rely upon the opposing party's responses to requests for admissions must introduce them into evidence during the trial of

---

* Rule 4:11 has been amended since the trial of this case to provide that "[o]nly such requests for admissions and the answers thereto as are offered in evidence shall become a part of the record." Rule 4:11(d).

the case. Failure to do so constitutes a waiver. *Avant Incorporated v. Polaroid Corporation*, 441 F.Supp. 898, 900 (D. Mass. 1977), *aff'd*, 572 F.2d 889, 892 (1st Cir.), *cert. denied*, 439 U.S. 837 (1978). *See also* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2264 (1970 & Supp. 1986).

Courts of other states have adopted similar rules. *See Farrands v. Melanson*, 438 A.2d 910, 912 (Me. 1981) (failure to introduce into evidence facts deemed admitted by unanswered requests for admissions tantamount to waiver); *S. Kemble Fischer Realty* v. *Board of Appeals*, 9 Mass. App. Ct. 477, 479, 402 N.E.2d 100, 101-02, *cert. denied sub nom. Costello* v. *Bd. of Appeals*, 449 U.S. 1011 (1980) (party who wishes to rely upon facts admitted in responses to request for admissions must introduce those facts into the record and bring them to attention of trial judge). *Contra Lutsch* v. *Smith*, 397 So.2d 337, 340-41 (Fla. Dist. Ct. App. 1981) (because an admission obtained in response to a request to admit does not go to a contested issue of fact, a party need not introduce the admission into evidence).

A practical rationale exists for the rule that a party who wishes to rely on Rule 4:11 must introduce the admissions into evidence. If admissions are not offered for introduction into evidence, the trial judge would not know whether to disregard the admissions or to tell the jury to consider the admitted facts as conclusively established.

■ Courts in other jurisdictions have held that a party waives his right to rely on the conclusive effect of responses to requests for admissions when he permits the party who made the responses to testify at trial, without objection, contrary to his responses. *See, e.g., Foellmi* v. *Smith*, 15 Wis.2d 274, 289-90, 112 N.W.2d 712, 719-20 (1962) (party waived right to rely on facts deemed admitted because party did not ground objection on claim that contrary testimony was precluded by a late response to a notice to admit).

■ This waiver principle is consistent with our contemporaneous objection rule. That rule provides that unless a party timely objects to the admission of evidence, he waives the objection, and the fact finder may consider the evidence, although it may have been otherwise inadmissible.

> [I]f a litigant sits by and permits evidence to go to the jury which the court, if it had been objected to, would have excluded, the jury have the right and it is their duty to consider

it along with all the evidence and give it such weight as they think it is entitled to.

*Newberry* v. *Watts*, 116 Va. 730, 736, 82 S.E. 703, 705 (1914). *Accord* Rule 5:25 (former Rule 5:21). *See also Ryan* v. *Commonwealth*, 219 Va. 439, 447, 247 S.E.2d 698, 704 (1978); *Hall* v. *Commonwealth*, 213 Va. 736, 737, 195 S.E.2d 882, 883 (1973); *Carter* v. *Nelms*, 204 Va. 338, 342-43, 131 S.E.2d 401, 404 (1963).

In the present case, TransiLift did not introduce into evidence Cunningham's answers to the requests for admissions as Rule 4:11 admissions. Indeed, TransiLift did not even inform the trial court that it was relying upon Rule 4:11 admissions until after the jury had returned its verdict.

Additionally, TransiLift not only failed to object to Cunningham's testimony but also elicited such testimony from Cunningham for the first time during cross-examination. Thus, TransiLift itself placed into controversy and fully litigated facts that it earlier had removed from dispute. Rule 4:11 does not obviate the contemporaneous objection requirement. *See* Rule 4:0(b) ("No provision of any of the Rules in this Part Four shall affect the practice of taking evidence at trial in any action; . . . .")

█ Consequently, we hold that in the circumstances of this case, TransiLift waived any binding and conclusive effect that Cunningham's deposition statements and interrogatory answers may have had pursuant to Rule 4:11(b) by failing to introduce the statements into evidence as responses to requests for admissions and by failing to object to the introduction of contrary testimony. Were we to hold otherwise, we would defeat the very purpose that Rule 4:11 was designed to achieve.

In its second argument, TransiLift contends that Cunningham is estopped from testifying contrary to his pretrial admissions. TransiLift relies on *Winslow* v. *Scaife*, 224 Va. 647, 299 S.E.2d 354 (1983), and other progeny of *Burch* v. *Grace Street Bldg. Corp.*, 168 Va. 329, 191 S.E. 672 (1937), to argue that a litigant cannot assume inconsistent and mutually contradictory positions. We have no quarrel with the soundness of the estoppel principle; however, we do not agree that the principle applies here.

Although TransiLift waived the conclusive effect of Cunningham's responses to the requests for admissions, we still must consider the effect of the pretrial admissions he made in his discovery

depositions and interrogatory answers. Unlike binding admissions made pursuant to Rule 4:11(b), discovery depositions and answers to interrogatories generally do not conclusively bind a party. Indeed, Rule 4:7(c) provides that "[a]t the trial or hearing any party may rebut any relevant evidence contained in a deposition whether introduced by him or by any other party."

While not conclusive, depositions and answers to interrogatories are admissible at trial for impeachment purposes and as substantive evidence. *See Troyer* v. *Troyer*, 231 Va. 90, 94-95 n.1, 341 S.E.2d 182, 185 n.1 (1986) (deposition admissible as party admission); *Horne* v. *Milgrim*, 226 Va. 133, 138, 306 S.E.2d 893, 895 (1983) (deposition admissible as substantive evidence); *M'Farland* v. *Hunter*, 35 Va. (8 Leigh) 489, 497 (1836) (answers to interrogatories not conclusive when introduced into evidence at trial). *See generally* IX Wigmore on Evidence § 2589 (Chadbourn rev. 1981 & Supp. 1987).

Moreover, a litigant-witness has the right to explain or clarify his testimony, including previously entered deposition statements and interrogatory answers. *See Ford Motor Co.* v. *Bartholomew*, 224 Va. 421, 431, 297 S.E.2d 675, 680 (1982). Resolution of any inconsistencies and discrepancies is peculiarly within the province of the jury. *VEPCO* v. *Mabin*, 203 Va. 490, 493-94, 125 S.E.2d 145, 148 (1962).

In the present case, TransiLift's counsel vigorously cross-examined Cunningham on the discrepancy between his pretrial discovery statements and testimony at trial, and the jury had the right to resolve the conflict in Cunningham's favor. Because Cunningham's deposition statements and answers to interrogatories were not conclusive, we hold that he was not estopped from explaining and clarifying the contradiction.

In the third prong of its argument, TransiLift says that the rule in *Massie* v. *Firmstone*, 134 Va. 450, 114 S.E. 652 (1922), binds Cunningham to his unequivocal pretrial statement that Smith operated the lift from the driver's seat using the dash-mounted controls after the accident. Smith and Apperson, however, testified that the dash-mounted controls would not operate the lift after the accident. Cunningham's expert testified that if the lift was operable from the driver's seat after the accident, operator error, not mechanical defect, caused the lift to malfunction. TransiLift argues that Cunningham cannot rely on the testimony of his witnesses to contradict his unambiguous pretrial statements; there-

fore, Cunningham's claim that a mechanical defect caused the accident is precluded as a matter of law.

■ We assume without deciding that the rule in *Massie* v. *Firmstone* applies to a litigant's deposition statements and answers to interrogatories; nevertheless, we do not agree that the rule applies in this case.

> The *Massie* doctrine is not to be read as a rule of thumb, categorical, absolute, and universally applicable. By definition, it applies only to "statements of fact" made by the litigant, to statements of facts "within his own knowledge", and to "the necessary inferences therefrom".
>
> . . . .
>
> [T]he rule in *Massie* [does not] apply to an adverse statement standing in isolation from the litigant's testimony as a whole.

*Baines* v. *Parker and Gladding*, 217 Va. 100, 104, 105, 225 S.E.2d 403, 406-07 (1976). Thus, "[a] damaging statement made in one part of [a litigant's] testimony must be considered in the light of an explanation of such statement made in a later part of his testimony . . . . And it is generally for the jury to determine whether it will accept such explanation or clarification." *Mabin*, 203 Va. at 494, 125 S.E.2d at 148. *See also Austin* v. *Jewell*, 232 Va. 197, 201, 349 S.E.2d 113, 115-16 (1986); *Olsten* v. *Leftwich*, 230 Va. 317, 320-21, 336 S.E.2d 893, 895 (1985); *Seven-Up Bottling Co.* v. *Moseley*, 230 Va. 245, 249, 335 S.E.2d 272, 274-75 (1985).

The accident occurred over four years prior to trial. Cunningham answered the first interrogatories almost two years after the accident occurred and gave his first deposition almost three years after the accident. When asked to explain the discrepancy between his pretrial statements and his in-court testimony, Cunningham said that after he reviewed a video tape of the accident that was shown during the trial, he realized he had been mistaken about the place from which Smith had operated the lift controls. He explained that he had reviewed the video tape on two separate occasions shortly after the accident.

■ The *Massie* rule "is intended to compel the exercise of good faith on the part of a litigant not to penalize him for honest mistakes or infirmities of memory." *Burruss* v. *Suddith*, 187 Va.

473, 482, 47 S.E.2d 546, 550 (1948). We cannot say as a matter of law that Cunningham's pretrial statements and in-court testimony, when considered as a whole, clearly and unequivocally establish that his claim is meritless.

TransiLift next contends that the trial court erred in permitting Cunningham to introduce into evidence the Veterans Administration bill for treating Cunningham from January 25, 1982, to March 22, 1982. The bill was in the amount of $12,255.

TransiLift concedes that generally a plaintiff can offer evidence of the reasonable value of services provided to him by a federal medical care provider because the federal government has a right of recovery from the tortfeasor that is subrogated to the plaintiff's claim against the tortfeasor. *See* 42 U.S.C. § 2651(a). TransiLift asserts, however, that this general rule is not applicable to the facts of this case because Cunningham "is eligible for VA hospital services for his service-connected disability." TransiLift asserts that "[i]n such a case, 42 U.S.C. § 2651(c) specifies that the United States has no right of recovery through subrogation otherwise authorized by 42 U.S.C. § 2651(a)." We do not agree.

Section 2651 of Title 42, United States Code, provides in pertinent part as follows:

> *(a) Conditions; exceptions; persons liable; amount of recovery; subrogation; assignment.* In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured . . . under circumstances creating a tort liability upon some third person . . . to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured . . . person . . . has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished. The head of the department or agency of the United States furnishing such care or treatment may also require the injured . . . person . . . to assign his claim or cause of action against the third person to the extent of that right or claim.
>
> . . . .

*(c) Veterans' exception.* The provisions of this section shall not apply with respect to hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) furnished by the Veterans' Administration to an eligible veteran *for a service-connected disability* under the provisions of chapter 17 of title 38, United States Code.

(Emphasis added.)

Section 2651(c) of Title 42 clearly refers to medical services provided by the Veterans Administration to an eligible veteran for a service-connected disability, not to services furnished in treating injuries caused by a third-party tortfeasor. In a deposition read into evidence at trial, the orthopedic surgeon who treated Cunningham testified that Cunningham was admitted to the Orthopedic Service of the McGuire Veterans Administration Hospital on January 25, 1982, because he had begun to experience neck pain, weakness in his arms, and increased loss of function in his hands after the fall. The doctor testified that Cunningham had neither neck pain nor weakness in his arms prior to the accident, and that the fall exacerbated his limited hand function. Neither Cunningham's new complaints nor their treatments were related to his service-connected disability. Thus, we conclude that the trial court did not err in admitting the Veterans Administration hospital bill.

Finally, TransiLift contends that the verdict is excessive. Accordingly, we will review the evidence relating to Cunningham's damages.

In 1968, Cunningham was wounded in combat in Vietnam. The wound caused permanent injury to his cervical spine, which resulted in his being confined to a wheelchair.

Cunningham, however, reinjured his cervical spine when he fell from the lift. The orthopedic surgeon testified that, as a result, Cunningham's cervical spine "was rendered more unstable," causing pain that previously did not exist. The fall also caused new damage to Cunningham's ulnar nerve, which had stabilized after his war injury. This new damage increased pressure "on the nerves from the neck" and "on the nerves from the elbows." Consequently, Cunningham has lost strength and functioning in his arms and hands. Cunningham's injuries and resulting pain are permanent; no type of treatment will relieve his pain completely.

At the time of the accident, Cunningham was 33 years old. He was able to hold various part-time employment positions. He was managing the Census Bureau in the Lynchburg area when he was injured. Before the accident, he arose each morning about 6:00 and went to bed about 10:00 or 11:00 at night. He also performed work in his home and yard that included trimming grass, painting, and vacuuming, scrubbing and waxing floors.

Since the accident, he has been unable to perform any kind of work because he cannot sit up in his wheelchair for more than a few minutes without severe pain. He now must spend most of each day in bed. His medical bills attributable to the accident amounted to $14,617.90, and he incurred lost wages in the amount of $1,046.56.

In personal injury cases, where there is no clear criterion for the assessment of damages,

> the amount to be awarded is left largely to the discretion of the jury. The verdict of the jury, arrived at upon competent evidence and controlled by proper instructions, has always been held to be inviolate against disturbance by the courts . . . . This is particularly true where the evidence establishes that the injured party has suffered pain for a prolonged period of time as there has not yet been discovered any standard by which to measure, in dollars and cents, the value of physical pain and suffering.

*Murphy* v. *Va. Car. Freight Lines*, 215 Va. 770, 775, 213 S.E.2d 769, 773 (1975) (citations omitted). *Accord Taylor* v. *Maritime Overseas Corp.*, 224 Va. 562, 567, 299 S.E.2d 340, 343 (1983); *Smithey* v. *Refining Company*, 203 Va. 142, 145, 122 S.E.2d 872, 875 (1961).

If the amount awarded is so great as to shock the conscience of the trial court and to suggest that the jury was motivated by passion, prejudice, or corruption, or a misconception or misconstruction of the facts or the law, the court should set aside the verdict and correct the injustice. The verdict should not be disturbed, however, merely because it appears to be more than the trial judge would have awarded had he been the trier of fact. *See Murphy*, 215 Va. at 774, 213 S.E.2d at 772. Similarly, we will not disturb a verdict merely because it is larger than the members of

this Court would have awarded had we been the triers of fact. *Graddy* v. *Hatchett*, 233 Va. 65, 72, 353 S.E.2d 741, 745 (1987).

Although Cunningham previously had been seriously injured, the undisputed evidence established that he received additional injuries that are permanent and painful. These new injuries have severely limited his pursuits and activities.

In this case, Cunningham comes before us armed with a jury verdict approved by the trial judge and therefore "occupies the most favored position known to the law." *Pugsley* v. *Privette*, 220 Va. 892, 901, 263 S.E.2d 69, 76 (1980). Nothing in the record suggests that the jury was motivated by passion, prejudice, or corruption, or a misconception or misconstruction of the facts or the law. Thus, under the facts presented, we cannot say that the verdict is excessive.

Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*