**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

"BEVERLY",BY HER GUARDIAN, JOHN
DOE,
Plaintiff-Appellee,

v.                                                                      No. 98-2230

DIAMOND TRANSPORTATION SERVICES,
INC.,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-97-1597-A)

Argued: April 6, 1999

Decided: June 1, 1999

Before WILKINSON, Chief Judge, and WILKINS and
HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Mark Elliott Solomons, ARTER & HADDEN, L.L.P.,
Washington, D.C., for Appellant. David William Goewey, VEN-
ABLE, BAETJER, HOWARD & CIVILETTI, L.L.P., Washington,
D.C., for Appellee. **ON BRIEF:** Lawrence C. Renbaum, Gregory S.
Feder, ARTER & HADDEN, L.L.P., Washington, D.C.; Alan S.

Block, GILBERG & KIERNAN, Washington, D.C., for Appellant.
Kenneth C. Bass, III, Martin L. Saad, VENABLE, BAETJER, HOW-
ARD & CIVILETTI, L.L.P., Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury found that the negligence of Diamond Transportation Ser-
vices caused the rape of a mentally retarded woman and awarded $3
million in compensatory damages. Diamond appeals the district
court's order denying its motion for a new trial. Finding that the dis-
trict court did not abuse its discretion, we affirm.

I.

This case grows out of the rape of "Beverly," a 55-year-old men-
tally retarded woman with the mental capacity of a six to eight year
old child. Beverly worked as a housekeeper for three and one half
hours a day at Fort Belvoir in Virginia.

To travel to work, Beverly rode a bus operated by appellant Dia-
mond Transportation Services. Diamond provided transportation ser-
vices under the name "Metro Access" under a three year, $2.7 million
contract with the Washington Metropolitan Area Transit Authority
(WMATA). Pursuant to that contract, Diamond transported handi-
capped individuals in Northern Virginia.

In May 1996 Mujahid Nasiruddin applied to Diamond for a posi-
tion as a bus driver. He was hired the day he applied, without a crimi-
nal background check or a former employer reference check. These
checks, however, were requirements of Diamond's hiring policy and
its contract with WMATA.

2

Had Diamond completed a background check, it would have found that Nasiruddin was a convicted felon just out of prison. His background included convictions in the past decade for conspiracy to commit robbery, felony robbery, possession of marijuana, reckless driving, and concealment of a firearm.

In the months preceding the rape of Beverly, Nasiruddin was written up for almost a dozen disciplinary offenses, including threatening passengers. Nevertheless, he was retained by Diamond as a bus driver.

On December 17, 1996, Nasiruddin picked up Beverly in a Diamond bus at her home and drove her to Fort Belvoir. She was the only passenger on the bus. Several hundred yards from her stop Nasiruddin pulled the bus over, got up, and approached Beverly. He then raped her.

Beverly then went to work and returned home. After she told her father what had happened, he took her to the emergency room. Dr. Paul Duch examined her. He testified that Beverly's vaginal area was "reddened and swollen" with "small cuts in the skin." Duch concluded that Beverly's condition indicated that she was a virgin prior to the rape. He found no other evidence of physical trauma. Duch also stated that Beverly was "anxious and uncomfortable" whenever he tried to discuss what had happened on the bus. Later, Beverly told military investigators that she was afraid of Nasiruddin and that he had hurt her.

In September 1997 Nasiruddin was convicted of the aggravated sexual abuse of Beverly.

Beverly's father filed suit on her behalf against Diamond for the negligent hiring and retention of Nasiruddin. At trial, Beverly testified that the rape "seemed nasty" to her and she was afraid. She also stated that Nasiruddin "hurt" her, and she "can't get over it" and is "sad."

Beverly's own expert, Dr. Lee Richmond, testified that Beverly suffers from post-traumatic stress disorder and experiences flashbacks, chronic depression, and shame and confusion. She opined that

3

Beverly was devastated and that her pain will only worsen because her mental impairment prevents her from participating in counseling.

Beverly's coworker of fourteen years testified that Beverly is "not as confident as she was before the rape" and that she "seems to have gone downhill." Additionally, she stated that Beverly "needs a lot of help" to cope with her job after the rape.

Diamond's own expert, Dr. Richard Ratner, acknowledged that Beverly suffered emotional distress. He stated that the memory of the rape, along with her mother's death, is the most grievous event in her life.

Diamond argued that Beverly continues to work a normal schedule and suffered no pecuniary damages or lost wages. Her own father testified that her routines around the house have not changed since the rape -- she continues to help out. The parties stipulated that Beverly's life expectancy was 27 years.

The jury returned a verdict of $3 million in compensatory damages for pain and suffering. Diamond then moved for remittitur or a new trial, arguing the award was excessive and against the weight of the evidence. The district court denied the motion. Diamond appeals.

II.

Diamond challenges the district court's denial of its motion for a new trial. Because this case involves a tort on military property, state law furnishes the applicable substantive law. 16 U.S.C. § 457. And when state law applies, it also provides the substantive new trial motion standard. Gasperini v. Center for Humanities, Inc., 518 U.S. 415 (1996). Thus, Virginia law governs the consideration of the new trial motion in this case.

Virginia law provides that "A new trial may be granted as well where the damages awarded are too small as where they are excessive." Va. Code Ann. § 8.01-383 (Michie 1992). The Virginia Supreme Court has explained that the

4

Circumstances which compel setting aside a jury verdict include a damage award that is so excessive that it shocks the conscience of the court, creating the impression that the jury was influenced by passion, corruption, or prejudice; that the jury misconceived or misunderstood the facts or the law; or, the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision.

Poulston v. Rock, 467 S.E.2d 479, 481 (Va. 1996); accord Transilift Equip., Ltd. v. Cunningham, 360 S.E.2d 183, 191 (Va. 1987); Williams Paving Co. v. Kreidl, 104 S.E.2d 758, 764 (Va. 1958).

Diamond contends that the verdict excessively compensated Beverly because her life has not changed in any meaningful way. It notes that Beverly returned to her job the day after the rape, continues to perform household tasks, suffered no lasting physical injuries, and still takes Diamond's bus to work every day. Diamond argues that in light of this impact, the district court erred by failing to explain why the verdict was not excessive.

We disagree. A host of evidence presented at trial demonstrated that Beverly was profoundly affected by the rape. She testified that she was "hurt" and "sad" and that she "can't get over it." Dr. Richmond testified that Beverly suffers from post-traumatic stress disorder and that her pain will worsen with time because her mental impairment does not allow her to verbalize her problems or participate in counseling. Beverly's long-time coworker testified that she has gone "downhill" since the rape and now needs a lot of assistance at work that she had not needed prior to her rape.

In the order denying the motion for a new trial, the district court considered the lack of tangible economic harm to Beverly and the limited nature of her life activities. Still, the court stated that it "cannot say that $3 million is too much for the anguish plaintiff has suffered and will continue to suffer due to her attack. Further, the award should not be diminished on the basis that [Beverly], because of her mental condition, suffered any less than someone without her mental impairment." Finally, the court concluded that though it "is unable to determine with certainty what would be an excessive award for the

5

rape of a mentally impaired, 55-year-old woman who had never before had sexual relations, the court feels quite comfortable finding that $3 million does not reach that threshold." Given the evidence presented at trial and the district court's reasoning, we hold that the court did not abuse its discretion by finding that the verdict fails to "shock the conscience."

In a final effort to disturb the jury's verdict, Diamond argues the district court failed to look at verdicts in comparable Virginia cases. It contends that this court's decision in Steinke v. Beach Bungee, Inc., 105 F.3d 192, 197-98 (4th Cir. 1997), requires this examination and an explicit comparison of those cases to the case at hand.

Steinke, of course, was a case governed by South Carolina law. Virginia law has discouraged looking at comparative cases. See Williams Paving Co., 104 S.E.2d at 764. Even assuming arguendo, however, that the trial court erred by not looking at comparable cases, Diamond invited that error. "It has long been recognized that `a court can not be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request.'" United States v. Herrera, 23 F.3d 74, 75 (4th Cir. 1994) (quoting Shields v. United States, 273 U.S. 583, 586 (1927)). Invited error doctrine recognizes that a party may not complain of a judicial error that it induced or approved. See United States v. Lawrence, 161 F.3d 250, 255 (4th Cir. 1998), cert. denied, 119 S. Ct. 1279 (1999); United States v. Mahler, 141 F.3d 811, 814-15 (8th Cir.), cert. denied, 119 S. Ct. 197 (1998).

In its brief in support of its motion for a new trial, Diamond never indicated that the trial court should look to comparable cases in Virginia state courts. In fact, far from contending that an examination of state court comparators was required, Diamond erroneously took the position that federal law provided the standard for granting a new trial in this case. Only after Beverly's brief in response suggested that the court look to state comparators did Diamond even mention comparable cases. And then, it did so while casting doubt upon the utility and necessity of such a comparison. Diamond's reply brief only offered comparable cases "[a]ssuming arguendo that the Court will look to other cases in its evaluation of this case." Given Diamond's initial silence and subsequent skepticism regarding comparators, it cannot be

6

heard to complain that the trial court failed to distinguish this case from comparable cases in Virginia state court.

For the foregoing reasons, the judgment of the district court is hereby

AFFIRMED.