## Richmond

KAY ADVERTISING COMPANY, INC., D/B/A BRITISH PROMOTIONS V.
OLDE LONDON TRANSPORTATION COMPANY.

September 5, 1975.

Record No. 740773.

Present, All the Justices.

*Stanley G. Barr, Jr. (Canoles, Mastracco, Martone, Barr & Russell,* on brief), for plaintiff in error.

*Robert M. Furniss, Jr. (Furniss, Davis & Sachs,* on brief), for defendant in error.

POFF, J., delivered the opinion of the court.

Kay Advertising Company, Inc., d/b/a British Promotions (the seller), filed a motion for judgment against Olde London Transportation Company, Jay H. Zimmerman, and Rudolph D. King (collectively, the buyer) to recover the amount due on certain purchase money notes. In its answer, the buyer admitted execution but alleged failure of consideration. The buyer filed a counterclaim seeking $15,000 in damages for breach of warranty. At the conclusion of all evidence, the trial court granted the seller summary judgment in the sum of

$9,000 for the balance due on the notes and submitted the case on the counterclaim to the jury. The jury awarded the buyer damages in the sum of $10,000. We granted the seller a writ of error to the judgment order entered April 10, 1974, insofar as it confirmed the verdict on the counterclaim.

The sale involved five double-decker English buses, a spare engine, and selected spare parts. In the contract executed March 29, 1972, the seller "warrants that the equipment specified by this contract will conform to the specifications furnished." One of the specifications was that the engines were "[f]ully reconditioned."

The buses were shipped from England to Portsmouth, Virginia, and were driven from there to Myrtle Beach, South Carolina, where the buyer took delivery on June 6, 1972. Before launching its new business enterprise, the buyer negotiated contracts for advertising space on four buses. From the start of operations, the buses malfunctioned, and on July 20, 1972, the engine in the bus on the "North Myrtle Beach run" became inoperable. Asserting that the seller had breached its covenant that the engines were "fully reconditioned", the buyer refused to make further payments on the purchase money notes.

In its instructions, the trial court defined the words "fully reconditioned" and told the jury that if they believed that the seller "promised to deliver buses with fully reconditioned engines; . . . that the engines were not fully reconditioned"; and that the seller's breach of warranty "resulted in damage to the [buyer]", they should find for the buyer. Whether the engines had been fully reconditioned according to contract specifications was a factual question on which the evidence was in conflict. The jury has resolved that question against the seller, and we hold that the evidence was sufficient to support their finding.

The dispositive issue before us is whether the jury were properly instructed concerning the elements of damage to which the buyer was entitled in event of recovery. With respect to this issue, the buyer's evidence showed that the cost of reconditioning each engine would be $3,000 and that, at the time of trial, three engines had been replaced at a cost of $9,000. The buyer also introduced evidence concerning labor costs and passenger revenues on the North Myrtle Beach run and the unearned balance of the advertising contract which had to be cancelled. There was no evidence concerning taxes, insurance, licenses, rental costs, or other business expenses allocable to the bus on

that route. With respect to the other buses, the record does not disclose the cost of operation (except total fuel expenditures), the passenger revenues, or receipts from advertising contracts.

Instruction No. 6, granted at the buyer's request, told the jury that for a breach of contract the injured party is entitled to recover such damages "as may naturally be expected to follow its violation, and they must be certain both in their nature and in respect to the cause from which they proceed." The instruction further told the jury that they could "consider the loss of business profits, if any, proved by a preponderance of the evidence to have been sustained" by the buyer as a result of the seller's failure "to live up to the contract."

In the trial court, the seller objected to Instruction No. 6 solely upon the ground that there was no evidence "regarding the loss of profits." Here, the seller argues that "the Court limited the jury's consideration of damages to loss of business profits in Instruction No. 6", and that, because the buyer "was a new business," any evidence of loss of profits necessarily would have been speculative and insufficient to support the instruction.

We do not agree that Instruction No. 6 limited the jury's consideration to loss of business profits. The instruction merely permitted the jury to consider such loss as *one* of the elements of the buyer's damages.

We do agree with the seller, however, that Instruction No. 6 improperly permitted the jury to consider the buyer's alleged loss of business profits. Such loss is recoverable only if it can be proved with a reasonable degree of certainty.

> "[P]rospective profits are not recoverable in any case if it is uncertain that there would have been any profits, or if the alleged profits are so contingent, conjectural, or speculative that the amount thereof cannot be proved with a reasonable degree of certainty. [Citations omitted].

> "[W]here the business which is interfered with or prevented as a result of a breach of contract is a *new or unestablished nonindustrial business,* or one merely in contemplation, the anticipated profits from such business cannot be recovered, for the reason that it cannot be rendered certain that there would have been any profits at all from the conduct of such business." (Emphasis added). *Sinclair Refining* v. *Hamilton & Dotson,* 164 Va. 203, 211, 178 S.E. 777, 780 (1935).

*See also Mullen* v. *Brantley,* 213 Va. 765, 768-69, 195 S.E.2d 696, 700 (1973).

The case at bar illustrates the reason for this rule. The buyer was newly-organized to begin the conduct of business upon delivery of the buses. At trial, the buyer failed to produce any evidence to show that, had the seller complied with its covenant, business revenues would have exceeded business expenses. This was because, without benefit of a history of business operations, it was impossible to predict, much less to prove, prospective profits with the "reasonable degree of certainty" the law requires. We are, therefore, of opinion that the trial court erred in instructing the jury that they could "consider the loss of business profits" as one of the elements of damages.

The judgment on the buyer's counterclaim is reversed, and the case is remanded for a new trial on the counterclaim, limited to the question of damages.

*Reversed and remanded.*